```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

_____
                                :
JOHN WALLER and WANDA           :      Civil Action
   KELLY-WALLER,                :      No. 1:10-cv-06342 (NLH)
                                :
           Plaintiffs,          :      **OPINION**
                                :
     v.                         :
                                :
FOULKE MANAGEMENT CORPORATION   :
   d/b/a CHERRY HILL DODGE AND
   CHERRY HILL TRIPLEX;         :
   CHRYSLER FINANCIAL,
                                :
           Defendants.          :
_____ :

**APPEARANCES:**

Graham F. Baird, Esquire
Weisberg Law, P.C.
7 South Morton Ave.
Morton, PA 19070
*Attorney for Plaintiffs John Waller and Wanda Kelly-Waller*

Laura D. Ruccolo, Esquire
Capehart & Scatchard, PA
800 Midlantic Drive
Suite 300 S
Mt. Laurel, NJ 08054
*Attorney for Defendant Foulke Management Corporation d/b/a Cherry Hill Dodge and Cherry Hill Triplex*

**HILLMAN, District Judge**

Plaintiffs, John Waller and Wanda Kelly-Waller, brought an action against Defendants, Foulke Management Corporation doing business as Cherry Hill Dodge and Cherry Hill Triplex ("Foulke Management") and Chrysler Financial, under the Equal Opportunity Credit Act ("EOCA"), the New Jersey Consumer Fraud

1

Act ("CFA"), and for fraudulent misrepresentation.  Before the court is Foulke Management's motion to dismiss[1] the complaint and compel arbitration.

For the reasons discussed below, Foulke Management's motion to dismiss the complaint and compel arbitration will be granted.

I.   **JURISDICTION**

This court has jurisdiction based on 28 U.S.C. §1331.  The federal question being raised by the plaintiffs is their cause of action under ECOA.  The Court has supplemental jurisdiction over the New Jersey CFA and fraudulent misrepresentation claims based on 28 U.S.C. §1367.

II.  **BACKGROUND**

Plaintiffs went to Foulke Management's car dealership on May 24, 2010 seeking to purchase a vehicle.  Plaintiffs purchased a 2010 Dodge Journey with an automobile loan for $23,499 at a 24.95% interest rate.  Plaintiff placed a $3,000 deposit and signed the following documents given to them by Foulke Management: (1) a "Spot Delivery Agreement" (2) a Chrysler Financial retail installment contract (RISC); and (3)

---

[1] As noted _infra_, when considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must, as we do here, accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  _Evancho v. Fisher_, 423 F.3d 347, 351 (3d Cir. 2005).

2

an arbitration agreement entitled "Your Right to Maintain a Court Action."

Foulke Management issued only temporary tags to Plaintiffs which lasted four months. After the four months, Foulke Management demanded Plaintiffs return the car because Foulke Management said they could not secure financing for the vehicle. Plaintiffs never received notice of the denial of credit. Plaintiffs now store the vehicle in a garage and cannot drive it because of the lack of permanent license tags.

In October 2010, Plaintiffs purchased a different vehicle from another dealership due to their inability to drive the vehicle bought from Foulke Management. The new vehicle cost the plaintiffs $34,812.40, financed at an interest rate of 13.6%.

Plaintiffs' complaint alleges that Foulke Management charged Plaintiffs a higher price for the auto loan than the terms and conditions granted to persons who are not of their race, national origin, gender, and/or age characteristics who presented similar levels of risk to the lender. Plaintiffs are African American. Plaintiffs' complaint further alleges that Foulke Management allows its employees to propose a risk level and base loan price unrelated to the qualifications of the borrowers or the risk to the lender. Further, Plaintiffs allege that Foulke Management has not properly instructed its employees

or brokers regarding their obligation to treat prospective customers without regard to race, national origin, gender or age. Finally, they allege that information on each applicant's race, national origin, gender and age has been available and known to employees and brokers, as well as to officials of Chrysler, who made decisions to grant or deny loans and to set or confirm the terms and conditions of any loan granted.

### III. DISCUSSION

#### A. Standard for Motion to Dismiss

A motion to compel arbitration may properly be considered as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Palcko v. Airbourne Express, Inc.*, 372 F.3d 588, 597 (3d Cir. 2004); *see also Nationwide Ins. Co. v. Patterson*, 953 F.2d 44, 45 n.1 (3d Cir. 1991). When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plaint statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

4

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)); see also *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1935 (2009) ("Our decision in *Twombly* expounded on the pleading standard for 'all civil actions[.]'" (citation omitted)). First, under the *Twombly/Iqbal* standard, a "district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). (citing *Iqbal*, 129 S. Ct. at 1950). Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 129 S. Ct. at 1950). "[A] complaint must do more than allege the plaintiff's entitlement to relief." *Id*. The defendant bears the burden of showing that no claim has been presented. *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005).

Moreover, in ruling on a motion to dismiss, a court has "'discretion to address evidence outside the complaint….'" *CitiSteel USA, Inc. v. General Electric Co.*, 78 F. App'x 832, 835 (3d Cir. 2003) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 559 (3d Cir. 2002)). Thus, the court "'may

5

consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'"[2] *Id.* (quoting *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

**B. Arbitration**

**1. The Federal Arbitration Act**

Section 2 of Title 9 of the United States Code states:

> "a written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C.A. §2 (Westlaw 2011). Section 2 is part of the Federal Arbitration Act ("FAA"), which was passed to "'reverse longstanding judicial hostility to arbitration agreements.'" *Gay v. Creditinform; Intersections, Inc.*, 511 F.3d 369 (3d Cir. 2007) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.C Ct.

---

[2] To its motion, Foulke Management attaches a copy of the parties' Spot Delivery Agreement and the arbitration agreement titled, "Your Right to Maintain a Court Action". Plaintiffs do not challenge the authenticity of the documents or Foulke Management's reliance on it. On the contrary, Plaintiffs acknowledge its existence, but argue that it is invalid because it is ambiguously worded.

1647, 1651, 114 L. Ed. 2d 26 (1991)). The federal law in terms of the FAA governs in both state and federal court. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). Furthermore, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Ultimately, the FAA creates a body of federal substantive law creating and ordering the duty to fulfill an agreement to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985).

The FAA can apply to statutory claims. *Cronin v. Citifinancial Servs., Inc.*, 2008 WL 2933869 *7 (E.D. Pa.). "The party seeking to avoid arbitration for a statutory claim has the burden of establishing that Congress intended to preclude arbitration of the claim." *Gay*, 511 F.3d at 379. According to the Court in *Bowen*, the fact that Congress enacted a statute which creates substantive rights and provides judicial remedies to defend those rights does not mean it has created a non-waivable, substantive "right" to judicial redress. *Bowen v. First Family Financial Services, Inc.*, 233 F.3d 1331, 1336 (11th Cir. 2000). When

7

a party agrees to arbitrate its statutory claims, they do not forego the substantive rights afforded to them by the statute. *Mitsubishi Motors Corp.*, 473 U.S. at 628.  They only submit their claims to an arbitral, rather than a judicial, forum. *Id*.  They are trading the procedures and opportunity of the courtroom for the simplicity, informality, and expedition of arbitration. *Id*.  "So long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Johnson v. West Suburban Bank*, 225 F.3d 366, 373 (3d Cir. 2000).  When a party is bound by an arbitration agreement and they are raising claims founded on statutory rights, there is no reason to depart from FAA guidelines. *Mitsubishi Motors Corp.*, 473 U.S. at 626.

### 2. Favorable Policy towards Arbitration

There is favorable state and federal policy towards arbitration and the enforcement of arbitration agreements. In determining whether a matter should be arbitrated, "there is a strong presumption in favor of arbitration, and doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Gay*, 511 F.3d at 387 (citing *Great W. Mortgage*, 110 F.3d at 228 quoting *Moses H. Cone Memorial Hospital*, 460 U.S. at 24-

25). Congress declared "a national policy favoring arbitration" and "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222, 230 (3d Cir. 1997).

There is a strong presumption in favor of arbitration and courts must fight the attempt to encroach upon arbitration proceedings where the statute does not overtly allow court involvement. *John Hancock Mutual Life Insurance Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998). The allocation of roles between courts and arbitrators promotes efficiency because "an expectation that aligns (1) decision-maker with (2) comparative expertise will help better secure a fair and expeditious resolution of the underlying controversy – a goal of arbitration systems and judicial systems alike." *Gay*, 511 F.3d at 387 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002)). The New Jersey Legislature has codified its endorsement of arbitration agreements and the New Jersey courts also have favored arbitration as a means of resolving disputes. *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 877 (N.J. 2002). Ultimately, "federal and New Jersey law and public policy favor the arbitration of disputes."

*Salvadori v. Option One Mortgage Corp.*, 420 F.Supp.2d 349, 356 (D.N.J. 2006).

### 3. The Validity of Arbitration Agreements

The first step in determining the validity of an arbitration agreement is to decide whether there was an agreement to arbitrate. *Gay*, 511 F.3d at 386. If there was an agreement to arbitrate, then it must be determined if the agreement was valid. *Id.* "Generally applicable contract defenses such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening the FAA." *Gras v. Associates First Capital Corp.*, 786 A.2d 886, 889 (N.J. Super. Ct. App. Div. 2001) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). In determining whether an arbitration agreement is valid, the court must not consider the merits of the claims giving rise to the controversy. *Id.* Additionally, "more than a disparity in bargaining power is needed to show that an arbitration agreement was not entered into willingly." *Great Western Mortgage Corp.*, 110 F.3d at 229.

After determining whether the arbitration agreement was valid, the court must ask: "does the dispute between the parties fall within the language of the arbitration agreement?" *John Hancock Mutual Life Insurance Co.*, 151

10

F.3d at 137. "If highly ambiguous language is used in the arbitration agreement, then the court does not have to compel arbitration." *Rockel v. Cherry Hill Dodge*, 847 A.2d 621, 623 (N.J. Super. Ct. App. Div. 2004). Language that can cause ambiguity includes: conflicting arbitration terms and unclear verbiage. *Id*. at 624-625. Additionally, the size of the print and location of the arbitration provision has great relevancy to any determination of compelling arbitration. *Id*. at 627. If the arbitration agreement does not specifically refer to the disputes covered by the agreement, then it can be ambiguous as well. *Garfinkel v. Morristown Obstetrics and Gynecology Associates, P.A.*, 773 A.2d 665, 671 (N.J. 2001). In determining ambiguity, the point is to verify that the parties knew that in electing arbitration as the only remedy, they were waiving their time-honored right to sue. *Id*. at 670.

"Absent a compelling federal policy to the contrary, the *sina qua non* of arbitrability is simply stated: that a valid arbitration exists and the dispute falls within the contours of that agreement." *John Hancock Mutual Life Insurance Co.*, 151 F.3d at 137. When reviewing the validity of arbitration agreements, courts must apply conventional contractual principles, with a healthy regard for the solid federal policy in favor of arbitration. *Id*.

11

A party which has made the agreement to arbitrate should be held to it unless Congress has demonstrated an intention to prevent waiver of judicial remedies for the statutory rights at issue. *Gras*, 786 A.2d at 890. "The parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp.*, 473 U.S. at 626.

### C. Applicability of Arbitration to Plaintiffs' Causes of Action

Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and to seek help and a remedy from the courts. *Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984). Such a course of action could lead to prolonged litigation, which is what is sought to be eliminated by contracting for arbitration. *Id*. The burden falls on Plaintiffs to establish that Congress meant to preclude arbitration for their statutory claim. *Johnson*, 225 F.3d at 370-371. Such an intention by Congress to preclude arbitration "may be found in the text, legislative history, or in an 'inherent conflict' between arbitration and the statute's underlying purposes." *Id*. at 37. Here, Plaintiffs have not proved that Congress intended arbitration should be precluded in this case.

Plaintiffs entered into a valid arbitration agreement with Foulke Management. The arbitration agreement is a

completely separate form, called "YOUR RIGHT TO MAINTAIN A COURT ACTION," which employs clear language regarding the terms of the agreement.  The arbitration agreement specifically states the types of disputes covered by the agreement.  The disputes covered include "any claim or dispute based on an allegation of fraud or misrepresentation, including fraud in the inducement of this or any other agreement;" and "any claim or dispute based on a federal or state statute, including but not limited to the N.J. Consumer Fraud Act."[3]  Plaintiffs are bringing claims under the New Jersey CFA and the United States ECOA, both of which are specifically covered by the arbitration agreement because the CFA is mentioned by name and the ECOA is a federal statute.  The Supreme Court upheld the application of the FAA to the ECOA.  *Green Tree Financial Corp.- Ala. v. Randolph*, 531 U.S. 79, 80 (2000); *see also Cronin*, 2008 WL 2944869 *7 ("The Supreme Court has upheld the application of the FAA to claims under many important statutory schemes, including…the ECOA.).

New Jersey courts have held "that claims arising under the CFA may be heard and resolved through arbitration." *Gras*, 786 A.2d at 891.  The court in *Gras* added that there was no inherent conflict between arbitration and the underlying purposes of the CFA, as Plaintiffs argue exist here. *Id*. at 892.

---

[3] There are other claims specifically covered by the arbitration agreement, but the ones listed are the ones relevant to the claims brought by Plaintiffs.

13

According to the Court in *Gras*, the N.J. CFA provides a successful plaintiff with other remedies that can also be granted by the arbitrator such as legal or equitable relief and award threefold the damages sustained by any person in interest. *Id.* Additionally, Plaintiffs are bringing a claim of fraudulent misrepresentation which is covered specifically by the arbitration agreement. The Supreme Court in *Moses* determined that the issue of fraud in the inducement is arbitrable. *Moses H. Cone Memorial Hospital*, 460 U.S. at 24. Furthermore, the words "disputes covered" are in all capital letters. Therefore, Plaintiffs knew of the enumerated disputes to be covered by the arbitration agreement, including the claims they assert now.

Moreover, there are no conflicting terms in the arbitration agreement. Bold typeface and all capital letters are used to indicate that the document limits rights, including the right to maintain a court action. The statement which warned Plaintiffs that they were waiving their right to a jury trial was in all capital letters as well. The top of the arbitration agreement spells out for Plaintiffs that "you" as used in the agreement is meant to represent Plaintiffs and that "we" and "us" as used in the agreement is meant to represent Foulke Management. Finally, directly above the Plaintiffs' signatures is a statement in all capital letters and bold typeface which states "READ THIS ARBITRATION AGREEMENT

14

CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO MAINTAIN A COURT ACTION." Under Plaintiffs' signatures, there is another statement in all capital letters and bold typeface stating that they understood and read the contents of the contract.  Therefore, Plaintiffs entered into a valid arbitration agreement with Foulke Management.

Plaintiffs argue that there is conflicting arbitration language between the RISC and Spot Delivery Agreement. Plaintiffs include a chart of what they claim is language taken from the RISC and Spot Delivery Agreement.  They appear to argue that since the RISC requires that any dispute be brought in arbitration in the State of New Jersey, whereas the Spot Delivery Agreement requires that any claim or dispute (including any dispute over the validity of the arbitration clause) be resolved by binding arbitration and not by court action, that the RISC lacks reference to the scope of arbitrability while the Spot Delivery Agreement expansively treats this issue.  They also argue that the RISC is ambiguous as to whether the arbitration shall be judicial or private arbitration, whereas the Spot Delivery Agreement requires "private AAA arbitration."

The main problem with Plaintiffs' argument is that the language they include in their chart does not appear in either agreement.  Upon the Court's review of the Spot Delivery Agreement, the Court found no such language as stated in

15

Plaintiffs' brief. It seems that the language that Plaintiffs attribute to the Spot Delivery Agreement actually appears in the RISC, section 21. The language Plaintiff attributes to the RISC does not appear in that document, nor in any of the three documents at issue.

The Court presumes that Plaintiffs intended to compare the RISC with the Arbitration Agreement, not the Spot Delivery Agreement, regarding the scope and procedure of the arbitration. In doing so, the RISC, section 21, states that "The arbitration hearing shall be conducted in the federal district in which you reside." The Plaintiffs reside in Philadelphia, Pennsylvania. The Arbitration Agreement, under the heading "[Location] of Arbitration" states "The arbitration will take place in the State of New Jersey in Burlington County unless you and we both agreed to another [location]."[4] The RISC also requires that the arbitration proceed under the applicable rules of the National Center for Dispute Settlement or its successor, or the National Arbitration Forum, or its successor. The Arbitration Agreement, in contrast, states that the arbitration will be conducted under the "Commercial/Consumer Arbitration Rules" of the American Arbitration Association.

---

[4] The Xerox copy of the Arbitration Agreement submitted to the Court is partially incomplete in that the left far most side is missing a few letters. Based on the context and that the letters "ion" appear, it seems reasonable that the missing letters are "locat" and that the entire word is "location."

Although the two agreements contain conflicting provisions, it does not create such ambiguity as to render the Arbitration Agreement unclear. In *Rockel v. Cherry Hill Dodge*, 847 A.2d 621, 623 (N.J.Super. 2004), the case relied upon by Plaintiffs, the court held "the uncertain content of the parties' agreement to arbitrate, the contracts' conflicting descriptions of the manner and procedure which would govern the arbitration proceedings, the absence of a definitive waiver of plaintiffs' statutory claims, and the obscure appearance and location of the arbitration provisions, militate against the entry of an order requiring arbitration … ." The court found that defendant's inclusion of two conflicting arbitration provisions in the contract documents confounded any clear understanding of the parties' undertaking.

Here, unlike in *Rockel*, the Plaintiffs signed a separate Arbitration Agreement entitled "YOUR RIGHT TO MAINTAIN A COURT ACTION" which expressly states "If you have signed a "Retail Installment Contract in connection with this transaction which contains a different arbitration agreement, then this arbitration agreement shall supersede that arbitration agreement and this arbitration agreement shall control any claims or disputes between you and us." The separate arbitration agreement states that it supersedes the RISC and, therefore, effectively overrides the arbitration provisions in the RISC.

17

In addition, here, unlike in *Rockel*, the Arbitration Agreement expressly covers any statute disputes or disputes brought pursuant to the N.J. Consumer Fraud Act. Finally, the arbitration provisions are not included in small language, but in a separate agreement with bold lettering advising Plaintiffs that they should read the agreement carefully and that it limits certain rights, including their right to maintain a court action.[5]

Thus, we conclude that Plaintiffs entered into a valid arbitration agreement with Foulke Management. The language was unambiguous and clearly spelled out what was covered by the agreement, and all of the claims asserted by Plaintiffs are able to be decided by an arbitrator.

## IV. Conclusion

There is strong federal and New Jersey policy favoring arbitration. Plaintiffs and Foulke Management entered into a valid arbitration agreement. All of Plaintiffs' claims are able to be resolved through arbitration. Thus, there is no reason for the court to prevent arbitration of Plaintiffs' claims.

---

[5] Although Defendant argues it cannot control the specifics of the language of the RISC because it is provided to them by the financial company, this argument is unavailing. Foulke Management supplies the RISC to its customers to sign along with other sale documents and is listed on the RISC as the "Creditor/Seller."

18

Therefore, Foulke Management's motion to dismiss and compel arbitration will be granted.


At Camden, New Jersey              s/Noel L. Hillman
                                   Noel L. Hillman, U.S.D.J.

Dated: August 11, 2011