UNITED STATES DISTRICT COURT
OF NEW JERSEY

| | |
|---|---|
| DENNIS F. WALLER : | |
| WANDA KELLY-WALLER : | |
| Plaintiffs : | Civil Action No. |
| : | **1:10−CV−06342−NLH −AMD** |
| v. : | |
| : | JURY TRIAL DEMANDED |
| EXETER FINANCE CORP.; : | |
| JOHN DOES 1-10, : | |
| Defendants : | |

### FIRST AMENDED CIVIL ACTION COMPLAINT

### Jurisdiction

1. Plaintiffs bring this case under federal and state consumer protection laws.

2. Plaintiffs seek actual, statutory, treble and punitive damages, and injunctive relief, together with attorney's fees and costs.

3. Jurisdiction of this matter is conferred upon this Court by 28 U.S.C. §1331 and/or §1332; supplemental jurisdiction over Plaintiffs' state law claims is granted by 28 U.S.C. §1367.

4. Venue lies in this judicial district in that Defendants do substantial business and/or are subject to personal jurisdiction herein pursuant to 28 U.S.C.A. §1391(c).

### Parties

5. Plaintiffs, Dennis F. Waller and Wanda Kelly-Waller, are adult individuals, married, residing at 1636 Francis Street, Philadelphia, PA 19130. Plaintiffs are citizens of the Commonwealth of Pennsylvania.

6. Plaintiffs are African-American and live in a Philadelphia neighborhood that is overwhelmingly African-American.

7.	The Defendant, Exeter Finance Corp., is a corporation engaged in the business of consumer lending in Pennsylvania, New Jersey and elsewhere with principal offices at 1231 Greenway Drive, Suite 450, Irving, TX 75038

8.	Foulke Management Group d/b/a Cherry Hill Dodge ("Foulke") is a New Jersey corporation licensed to do business in the State of New Jersey with a principal place of business located at 1708 W. Marlton Pike, Cherry Hill, NJ 08002.  Foulke exercised control over and management of all its employees and agents, and/or at all times material to this complaint, acting alone or in concert with others, formulated, directed, controlled, substantially assisted, enabled and/or participated in the acts and practices of all other defendants and their agents, including is a citizen of the State of New Jersey.

9.	Defendants, John Does 1-10, at all times material were and/or are agents, servants, work persons, employees and/or affiliates of the above defendants and/or are liable hereunder.

10.	At all times material, Defendants were acting individually, within the course and scope of their authority and employment, and/or through their agents, servants, work-persons, and/or employees, respectively.

11.	At all times material, Defendants acted individually and/or on behalf of each other as agents, servants, work-persons, alter ego's, and/or employees thereof.


**Facts**

    **Illegal Yo-Yo Transaction Facts**

12.     On or about May 24, 2010, Plaintiffs visited the lot of Foulke Management Group d/b/a Cherry Hill Dodge ("Foulke") seeking to purchase a vehicle for plaintiff Mrs. Waller's use.

13.     Foulke is a New Jersey corporation licensed to do business in the State of New Jersey with a principal place of business located at 1708 W. Marlton Pike, Cherry Hill, NJ 08002.

14.     On or about May 24, 2010, Plaintiffs closed an automobile loan in the amount of $23,499 at a 24.95% rate of interest (hereinafter "the auto loan") with a $3,000 deposit for purchase of a 2010 Dodge Journey VIN 3D4PG4FB3AT194122 by signing a retail installment contract (RISC) with Foulke and a financing agreement with defendant Exeter (Ex. A and Ex. B, respectively).

15.     After purchase of the car, Foulke issued only temporary tags to Plaintiffs for a period of roughly four (4) months after it which it demanded Plaintiffs return the car because defendant stated it could not secure financing for the vehicle.

16.     Plaintiffs never received a notice of denial of credit from defendant Exeter.

17.     Plaintiffs stored the subject vehicle in a garage and could drive it due to the lack of permanent license tags.

18.     Ultimately the vehicle was repossessed.

### Credit Discrimination Facts

19.     In or around October, 2010, due to Plaintiffs' inability to drive the subject vehicle, Plaintiffs purchased another vehicle from Pacifico Ford for his wife in the amount of $34,812.40 financed at an interest rate of 13.6% - nearly half of the rate given by Exeter for the subject vehicle.

20. The terms and pricing of the auto loan were not consistent with Plaintiffs' credit qualifications as a borrower or the risk to defendant.

21. Plaintiffs was charged a higher price for the auto loan than the terms and conditions granted to persons without his race, national origin, gender and/or age characteristics who presented similar levels of risk to the lender.

22. Upon information and belief, Exeter and Foulke allow their respective employees to propose a risk level and base loan price unrelated to the qualifications of the borrowers or the risk to the lender.

23. Exeter and Foulke have not properly instructed their respective employees or brokers regarding their obligation to treat prospective customers without regard to race, national origin, gender or age; and defendant has failed to supervise or monitor the performance of employees and brokers to ensure that loan proposals would lead to compliance with fair lending laws.

24. Upon information and belief, information as to each applicant's race, national origin, gender and age has been available and known to employees and brokers, as well as to officials of Exeter who have made the decisions to grant or deny loans and to set or confirm the terms and conditions of any loan granted.

25. As a direct result of the aforesaid defects in processing their application for credit, Plaintiffs suffered harm and damages including, but not limited to:

    a. financial injury, including a grossly overpriced car note;

    b. annoyance and inconvenience;

    c. humiliation, embarrassment and emotional distress;

      d.  such other damages the exact extent of which are not yet fully known, any and all of which may be permanent, and may be revealed through continuing discovery.

**Causes of Action**

### COUNT I – ECOA CREDIT DISCRIMINATION, DISPARATE TREATMENT

26. Plaintiffs incorporate by reference all prior paragraphs as if set forth at length herein.

27. This Court has jurisdiction to decide claims brought under the Equal Credit Opportunity Act, 15 USC 1691, *et seq*, pursuant to 15 USC 1691e(f).

28. Plaintiffs is among "applicants" as the term is defined in the ECOA, 15 USC §1691a(b).

29. Defendants is among "creditors" as the term is defined in the ECOA, 15 USC §1691a(e).

30. Plaintiffs completed a credit application and/or one was completed on his behalf by Defendant Foulke for credit in connection with his purchase of a vehicle.

31. Plaintiffs' credit history and collateral would have qualified him for a loan on terms substantially more favorable than those he was offered as is proven by the Ford financing deal.

32. Upon information and belief, Exeter has offered and continues to offer auto loans in Pennsylvania at lower rates to white car buyers.

33. There was no business or other legal justification for the unfavorable credit terms provided by Defendants to plaintiffs.

34. As a direct and proximate result of defendants' discriminatory treatment, Plaintiffs have incurred significantly higher fees, points, and interest charges that than otherwise.

35. Additionally, under the provisions of the ECOA, Defendants were required to give notice of their decision on his credit application to Plaintiffs within 30 days of receipt.

36. Defendants allowing Plaintiffs to sign the financing agreement and leave the lot with the subject vehicle constituted approval of credit in the transaction to purchase the subject vehicle.

37. At the time that Defendants informed Plaintiffs that they had been approved for credit, Defendants knew or had reason to know that Defendants would not actually extend credit to Plaintiffs for the vehicle and knew or should have known that the installment contract could not be assigned on terms that would have been acceptable to Plaintiffs.

38. Defendants, as alleged above, later informed Plaintiffs that they did not qualify for credit to purchase the subject vehicle, and credit was denied, effectively terminating the transaction.

39. The original notice of approval given to Plaintiffs was false, and, in general, a violation of the provisions of 15 USC §1691(d).  Thus, the false notice of credit approval was used as the "bait" in a "bait and switch" which was designed to defraud Plaintiffs into purchasing the vehicle on terms which were less advantageous to Plaintiffs.

40. The subsequent denial and revocation of credit by Defendants constituted an "adverse action" as the phrase is defined in the ECOA, 15 USC §1691(d).

41. After taking adverse action on Plaintiffs' credit application for the subject vehicle, Defendants were required to provide written notice of that adverse action within 30 days of taking that action, 15 USC §1692a.

42. Defendants failed or refused to provide that written notice to Plaintiffs in violation of 15 USC §1692a.

43. Defendants, at all times, were required to maintain such records or other data relating to such loans as may be necessary to evidence compliance with ECOA or to enforce any action pursuant to the authority under the Act, 15 USC §1692b.

44. Upon information and belief, Defendants failed or refused to maintain records of the transaction which would fulfill the provisions of ECOA, in violation of 15 USC §1691b.

45. The defendants' aforesaid conduct violates the Equal Credit Opportunity Act, 15 U.S.C. §1691.

## COUNT II-FRAUDULENT MISREPRESENTAION

41. Plaintiffs incorporate by reference paragraphs all prior paragraphs as if fully set forth fully herein.

42. Defendants' fraudulent misrepresentations included, but were not limited to, knowing or having reason to know that they would not qualify Plaintiffs for financing and then misrepresenting that Plaintiffs must return the subject vehicle rather than Defendants honor the lawfully executed RISC and financing agreements as well as misrepresent Plaintiffs' qualifying interest rate as based on lawful credit determinations thereby fraudulently inducing Plaintiffs to purchase the vehicle.

43. At all times material, Plaintiffs justifiably and detrimentally relied upon the material intentional and/or fraudulent misrepresentations of Defendants, which resulted in Plaintiffs' loss of down payment and derogatory effect on their credit.

## COUNT III – CONSUMER FRAUD ACT

44. Plaintiffs incorporate by reference paragraphs all prior paragraphs as if fully set forth fully herein.

45. At all times material hereto, the subject vehicle was purchased by Plaintiffs to be used primarily for personal, family and/or household use.

46. At all times material hereto Plaintiffs are within the purview and protection of the Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-1, et seq.

47. The fraudulent, deceptive, and unfair conduct of Defendants, as set forth above, by and through their agents, servants, workmen and employees, constituted "unfair or deceptive acts or practices" within the meaning of the CFA.

## COUNT IV - VIOLATION OF THE UNIFORM COMMERCIAL CODE

48. Plaintiffs incorporate by reference paragraphs all prior paragraphs as if fully set forth fully herein.

49. Plaintiffs fulfilled all of their duties and obligation under the subject contract(s) and/or they were prevented from performing by the defendants' misconduct.

50. Plaintiffs did not default under the subject contract.

51. Where a consumer signs a RISC and the dealer cannot sell or assign the RISC there has been no consumer default.

52. Defendants never perfected their security interest in the subject vehicle(s).

53. By denying the binding nature of the RISCs and demanding that the Plaintiff sign additional RISCs or return the vehicle, the defendants effectively "repossessed" the subject vehicle even before the actual repossession.

54. Because there had been no default, Defendants did not have any then present

possessory interest or right in the vehicle when defendants repossessed the vehicle.

55. Defendants violated 13 Pa.C.S.A. §§ 9601 et seq. and 69 P.S. § 623 when they took possession of the vehicle where there had been no default.

56. Defendants never provided any written notice to Plaintiffs related to their taking possession of the subject vehicle in violation of 69 P.S. § 623.

57. Defendants never provided any written notice to Plaintiffs related to their disposition of the subject vehicle in violation of 13 Pa.C.S.A. §§ 9611-9612 and 9614 and 69 P.S. § 623.

## JURY PRAYER

Plaintiffs demand trial by jury.

## PRAYER FOR DAMAGES

WHEREFORE, as a result of the above-described conduct Plaintiffs therefore prays this Honorable Court award the following damages for:

A. ECOA and Reg. B, Defendants are liable to Plaintiffs under 15 U.S.C. §169le(b):

   (1) Actual damages;

   (2) Punitive damages up to $10,000; and

   (3) Reasonable attorney fees and costs.

B. Fraud and violation of the CFA, actual damages, treble damages, together with interest, costs, punitive damages, attorney's fees, and such other and further relief as this Honorable Court deems just.

9

C.  Equitable relief in the form of a written explanation from defendant for denial of credit to Plaintiffs as well as credit repair.

Dated: September 29, 2011                           **WEISBERG LAW, P.C.**
                                                    BY:  /s/Matthew B. Weisberg
                                                    7 South Morton Ave.
                                                    Morton, PA 19070
                                                    (610) 690-0801
                                                    Fax (610) 690-0880
                                                    Attorney for Plaintiffs